JAMES SPARKS, ET AL. *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—163, 288.]

**Competency of Witness Who is a Defendant.**

Where two persons are jointly indicted and are tried together, and each convicted of manslaughter, but the evidence fails to show that the conspiracy charged in the indictment did, in fact, exist, it is error for the trial court to refuse to permit each to testify on the trial as a witness. To deprive a person charged with a criminal offense of the testimony of one jointly indicted with him, it should be made to reasonably appear from the evidence of the whole case that such conspiracy existed.

**Declaration or Threat as Evidence.**

It is error for the trial court in a homicide case to refuse to permit a declaration of the deceased, made a short time before he advanced to the store house of the accused, to go to the jury where the declaration accompanied with an oath was that he was going to take the town of Lilly. While the threat in terms was not directed at the accused, there can be no doubt he meant them or one of them, especially, since his friend had just returned from the store of the accused and reported to decedent that "he had housed Lilly," and it is clear the declaration excluded had direct reference to the accused.

**Instruction as to Conspiracy in Homicide Case.**

Where there is no proof of a conspiracy in a homicide case it is error for the court to give any instruction as to the law of conspiracy.

**Instruction as to Law of Self-Defense.**

In a criminal case, if there is any evidence tending to show that accused was defending himself or property when he killed the deceased, the accused is entitled to an affirmative instruction upon the hypothesis of self-defense and apparent necessity.

APPEAL FROM LAUREL CIRCUIT COURT.

May 26, 1885.

OPINION BY JUDGE LEWIS:

James Sparks and William C. Graves, having been tried together, each convicted of manslaughter and sentenced to the penitentiary for twenty-one years under a joint indictment charging them and one Wm. Hodges with the murder of Walter Killion, in pursuance of a previous conspiracy, prosecute this appeal. Hodges, demanding a separate trial, is not a party to the appeal.

The homicide was committed in a small village in Laurel county, called Lilly, a railway station, in front of and near to a storehouse where appellants as partners were engaged in selling goods, beer, and probably, spirituous liquors.

In the side or end of the house fronting the street and railway depot, about fifty steps off, was a door and a window on each side of it, and from one of the windows was fired at the deceased a shot gun, and from the other, a pistol, both of which took effect, and very soon after receiving the last wound he fell and died.

The evidence shows that a week or two before the killing, without any sufficient cause appearing, the deceased took offense at Sparks, and to a witness made a threat of violence, cursing him at the same time.

One week before he was killed, deceased went to the storehouse of appellants, and purchased a quart of whisky, refusing to pay the price asked, and threatening to make Graves, who had filled his bottle, take a less sum for it. Sparks interfered, and to prevent a fuss, as he said, offered himself to pay the difference, whereupon, the deceased without any provocation turned upon him with a drawn pistol, compelled him to hold up his hands to show he was not armed, and Sparks, in fear of losing his life, ran out of his storehouse, followed by the deceased, who fired two or three shots at him as he ran.

A day or two afterwards the deceased told a witness he would have to kill Sparks.

On the day of the killing, the deceased who appears not to have been a resident of the place, went to Lilly in company of others, and took position on the depot platform, where for some time during the afternoon, they engaged in dancing, drinking and firing pistols. And afterwards the deceased was seen going up the road with a pistol in his hand calling to one Moore to stop, but the latter went on, and the deceased without provocation, shot at him, near

to where were women. And soon afterwards the deceased said to a witness with an oath, that they (mentioning no names) had said he, deceased, could not come to Lilly, but he had run Moore off and he would run Sparks and Graves off, or shoot their entrails out. And to another witness he said with an oath, "Jim Sparks shall not live and stay in Lilly."

A short while after this the deceased requested one Hopkins to go with him and help him whip Sparks and Graves, which Hopkins declined to do, whereupon he upbraided Hopkins for cowardice, who told him they had been loading shot guns down there, meaning at the store of Sparks and Graves, all the evening, and that he, deceased, must not go. To this the deceased replied profanely: "I can whip them both," and unbuttoning his vest and the top button of his pants, drew his pistol up a short distance, but not out, and with his hand on it, started, from where he then was, near Jackson's store, for appellant's store, fifty or sixty yards off, and though remonstrated with, continued to advance; and when he got to within eight feet of the window, the first shot was fired from the window at him, and then he fired. He then crossed the platform, as some witnesses testify, first trying to face the door, to the other window, from which another shot was fired at him; the deceased himself firing three shots from first to last.

The evidence is somewhat conflicting as to the precise attitude of the deceased, when the first shot was fired from the window at him. All the witnesses agree that his right side was towards the house, but there is evidence tending to show that when first fired at his right hand was raised, and that if he did not fire simultaneously with, he did do so immediately after the first shot fired at him, though there is other evidence to the contrary.

The first error we will notice, is the refusal of the court to permit a declaration of the deceased, made a short time before he advanced to the storehouse of appellants, to go to the jury. That declaration, accompanied with an oath, was that he was going to take Lilly. Clearly the court erred in excluding this declaration from the jury; for while the threat in terms was not directed at appellants, there can be no doubt that he meant and referred to appellants, or at least to Sparks, who were then in their storehouse which was closed to prevent the deceased from entering. And in view of the fact that one Dicken, his friend and companion, had just before returned from the storehouse of appellants, the door of which he

found fastened, and reported to the deceased that he had housed Lilly, it is clear that the declaration of deceased, which was excluded, had direct reference to appellants.

The next error is the refusal of the court to permit either Sparks or Graves to testify on the trial. An avowal was made that the former would testify as a witness that Graves had entered into no conspiracy with him to kill or injure the deceased and did not fire a single shot, and had nothing whatever to do with the killing. And that Graves would testify, that at the time the deceased was shot he was drawing his pistol, and that there was no conspiracy or combination whatever between him and Sparks to kill or harm the deceased.

If there was no conspiracy established by the evidence each of the appellants was entitled to the evidence of the other. For it is not the object of the law to give to the commonwealth's attorney the arbitrary power to deprive a defendant on trial, of evidence essential for his defense, by drawing a joint indictment, and charging a conspiracy between him and the witness to commit the crime, when in fact no conspiracy exists.

A conspiracy is correctly defined to be "a combination of two or more persons, by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means."

It is the province of the court to determine whether a conspiracy charged in the indictment has been proved, in order to pass upon the question of admissibility of the evidence of a person so charged. And from necessity, the decision of that question must be left to some extent to the discretion of the trial court. But to deprive a person charged with a criminal offense, of the testimony of one jointly indicted with him it should be made to reasonably appear from the evidence of the whole case that such conspiracy existed. And this court should never hesitate to reverse the action of the lower court, when it appears that thereby a defendant has been improperly and illegally deprived of material evidence.

We have looked in vain through this record, for a single act or word by appellant Graves, showing or tending to show that he confederated or conspired with Sparks or any one else to take the life or to injure the deceased in any way or that he aided or assisted any one in taking his life. No threat to do him injury, or any ill feeling on his part towards the deceased, is shown. On the con-

trary, it appears from the evidence that he and deceased were not hostile or unfriendly, the evidence tending to show that the hostility of the deceased was towards Sparks, and not towards Graves.

The only circumstance from which a conspiracy could in any state of case be inferred, is the fact that when deceased was shot, Graves and Sparks were in the storehouse together, the door of which was closed and fastened. But they were partners in the store, Graves had a right to be there, and his business required him to be there. And if the door was closed it was done to prevent the threatened violence of the deceased, and done at the instance and advice of persons who believed and informed them it was necessary to prevent the deceased from carrying out his threats of violence towards Sparks whose life he had attempted a week before to take, and was then threatening.

It is shown that both the shots fired from the house might have been fired by the same person, and no witness testifies that Graves fired a single shot, or even had a pistol or gun. It is only by a vague surmise, without any ground for it, that Graves can be implicated in any manner.

The evidence then not being sufficient to show that the conspiracy charged in the indictment did in fact exist, the court erred in refusing to permit appellants to each testify on the trial as a witness.

The following instruction was asked by appellants, and in our opinion should have been given:

"If the jury believe from the evidence that the defendants or either of them, at the time of the killing, were in their own house, and that they had reasonable grounds to believe and did believe that Killion was then and there about to forcibly enter the same, with the view of doing them or either of them great bodily harm, then they or either of them, so believing had the right to use such force as was necessary to prevent such entry, and avert such threatened danger, even to the taking of his life."

We see no objection to this instruction. By the evidence it is shown that to prevent the deceased from taking the life of Sparks, or doing him bodily harm, which he repeatedly threatened to do, and by his demonstrations in full view of their store indicated his intention to do, and from his character, which was that of a determined, overbearing and dangerous man, they had reason to fear he would do, they were compelled to shut themselves for hours in

their own business house, and not even able to go to their dwelling-house for their meals, without having their lives endangered.

The situation and circumstances were such as to authorize the belief that his object in entering the storehouse of appellants, was to take their lives or do great bodily injury to them or one of them, and as they had it closed, he could only enter by violence, which they clearly had the right to prevent.

As there is no proof of a conspiracy, the court erred in giving any instruction based upon such a hypothesis, and, in our opinion, the court was not authorized to give any instruction based upon the assumption that appellant Graves aided or abetted Sparks in killing the deceased, for there is not, as the record now stands, any evidence whatever implicating Graves.

We think the appellants were also entitled to an affirmative instruction upon the hypothesis of self-defense, and apparent necessity.

For the reasons indicated the judgment as to both appellants is *reversed,* and cause remanded for a new trial, and further proceedings consistent with this opinion.

Judgment *reversed.*

*Boyd & Croft, Jewel & Ramsey, W. O. Bradley, for appellants. P. W. Hardin, N. B. Jones, for appellee.*