CASE 15—INDICTMENT—JANUARY 22.

# Hart v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

EVIDENCE—UNCOMMUNICATED THREATS.—Upon a trial for murder or manslaughter, threats by the deceased, although not communicated to the accused, are admissible in evidence as tending to show that the deceased began the difficulty, that matter being in· issue, and being important for the purpose of determining whether or not the accused acted in self-defense.

GEO. DENNY, JR.,, FOR APPELLANT.

1. All threats, whether communicated or not, are competent to aid the jury in determining the intention of the parties at the time of the difficulty. (Cornelius v. Commonwealth, 15 B. Mon., 546.)

2. The court erred in instructing the jury, in effect, that in order to acquit upon the ground of self-defense, they must believe that the defendant had a *valid* or *sufficient* cause to believe that he was in danger, when in fact he. was entitled to an acquittal if he believed and had *reasonable grounds to believe* that he was in danger. (Holloway v. Commonwealth, 14 Bush, 346.)

WATTS PARKER ON SAME SIDE.

1. The court erred in refusing a continuance. because of the absence·of important witnesses, the defendant having been diligent in his efforts to procure their presence.

2. Evidence of threats against the party to which the defendant belonged, which were communicated to him, were competent both for the purpose of showing who began the difficulty, and for the purpose of showing that the defendant had reasonable grounds to believe that he was in danger. (Bishop on Crimiual Law, vol. 1, sec. 305.)

3. The court erred in rejecting evidence to show that Veal had been engaged in other difficulties at the polls, as this evidence tended to show that he was ready to carry out the threats he had made.

4. The instruction as to self-defense was misleading, as it was calculated to make the impression upon the minds of the jury that *actual* danger was necessary in order to justify the defendant in acting in his self-defense.

  Authorities cited (upon what point does not appear): Morgan v. Commonwealth, 14 Bush, 106; Holloway v. Commonwealth, 11 Bush, 344; Kennedy v. Commonwealth, 14 Bush, 352; Oder v. Commonwealth, 80 Ky., 32; Munday v. Commonwealth, 2 Ky. Law Rep., 67.

P. W. HARDIN FOR APPELLEE.

1. Evidence of threats not communicated to the defendant was properly excluded.

2. The court has the right to determine from the whole case whether the refusal to continue prejudiced the appellant. (Vonderhide v. Commonwealth.)

  As the testimony of the absent witness would have been merely cumulative, the refusal to continue was not prejudicial.

3. The instructions were most favorable to the accused, and certainly were not prejudicial.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is a conviction for voluntary manslaughter. In a difficulty between the appellant, Levi Hart, and John Veal, a by-stander who was in nowise engaged in it, by the name of Charles Waller, was shot and instantly killed. A jury have found that the appellant did it. If so, it was undoubtedly unintentional upon his part, and done in shooting at Veal, who was also then killed. The case, therefore, turns upon whether the conduct of the appellant in so shooting was excusable. If he was first attacked by Veal, and acted only in self-defense, then it was excusable homicide.

The testimony is very conflicting as to whether the appellant or Veal began the conflict. Some witnesses testify that the one, and some that the other, made the first offensive movement, and fired the first shot.

The appellant offered to prove that on the day previous to the killing Veal said that he would elect his man at the election which was to occur the next day, or kill the appellant. This threat was not communicated to the accused, and the testimony was rejected. It is urged that it was competent by way of showing who brought on the difficulty. The two men were opposing each other, being for different candidates. The threat substantially fixed a time when in a certain event it would be carried out. The difficulty did then occur; the event named was then in progress; and the issue now being, who was the aggressor, is the evidence of the uncommunicated threat by the deceased competent to illustrate it? The question has not been heretofore directly decided by this court, and indeed we have little authority to guide us to a correct conclusion.

In the case of Cornelius v. the Commonwealth, 15 B. M., 539, the prisoner, who was being tried upon the charge of murder, introduced evidence of threats which had been communicated to him, and which had been made by the deceased. He then offered to prove other threats upon the part of the accused, made a few days before the killing, and which had not been communicated to the prisoner. The lower court excluded them; but this court said: "We think that this testimony should, under the circumstances in this case, have been admitted. It tended to confirm

the other evidence, that Hopson had made threats against the prisoner, and to counteract a presumption of fabrication by the witnesses who gave that testimony. *Besides, Hopson's intention to make an attack on the accused was an important matter*, as well as the belief of the existence of such an intention on the part of the prisoner."

In the case just cited the admissibility of the uncommunicated threats was based upon the fact that they tended to confirm the communicated threats, and also evinced the intention of the deceased, and illustrated the question whether the one or the other was the aggressor. In the case now before us no communicated threats were proven; hence, the naked question is in hand, whether uncommunicated threats by the deceased are admissible for the purpose of showing whether he or the accused began the difficulty, when this is in issue. In determining it, it must be kept in mind that the question before the jury is, whether the accused is excusable upon the ground that the act was done by him in defending himself against an unlawful attempt by Veal to kill him, or inflict upon him great bodily harm.

Threats to commit the crime for which one is on trial are competent as evidence against him upon the question whether he in fact did it, because they show an intention to do it, and therefore a probability is created that he is the person who did it.

If A enters a house where B is, and just before doing so he avows an intention to kill B ; and shortly after entering a difficulty between them occurs in which A is killed, and it is a question which one of them began

it, certainly the declaration of A, although uncommunicated to B, would be competent evidence to illustrate the question who was the aggressor, and as tending to show that A made the attempt to carry out his threat. There is in principle no difference between this evidence and that which we are now considering, save in degree. In the one case the threat would in point of time be more convincing perhaps; but the only difference would be in the weight of the testimony. It may be said that threats are often the subject of false testimony; and that mischief will result from such a rule. This is true, however, to a greater or less extent of any species of testimony; and the tendency of the age is to widen the door for the admission of evidence, because it has been found by experience that justice is thereby promoted.

In the case of Jewett v. Banning, 21 N. Y., 27, it was held in an action for an assault and battery, alleged to have been committed in the absence of witnesses, that evidence of former ill-will by the defendant against the plaintiff was competent as a circumstance to show its commission.

In 1 Wharton's Crim. Law, section 642, it is said: "Where A is charged with a murderous assault upon B, or with killing B (the plea of self-defense not being set up), remarks or threats affecting A, made by B to a third party before the assault, are not admissible in A's behalf; especially when it does not appear at what time they are communicated to him.

"*Yet, if the question is whether the deceased was the assailant, the fact that he declared beforehand*

*that he meant to attack the defendant is material;
nor, on this issue, is it necessary that the defend-
ant should be proved to have had, notice of such
threats.*"

Again, in volume 2, section 1027, the author says:
"Where the question is as to what was the deceased's
attitude at the time of the fatal encounter, recent
threats may become relevant to show that this atti-
tude was one hostile to the defendant, even though
such threats were not communicated to the defend-
ant."

In the case of Stokes for the killing of James
Fisk, 53 N. Y., 164, the question was directly pre-
sented; and it was there held that where it was a
question before the jury whether the act of the
accused was done in defending himself, that recent
threats upon the part of the deceased toward him
were competent as evidence, although they had not
been communicated to him. They, of course, are not
competent to show the *quo animo* of the defendant,
or from what belief he may be actuated, because,
not having been communicated, he can have none by
reason of them. But where the question is at issue,
whether the one or the other was the aggressor,
where there were no witnesses to the transaction, or
if there were, the matter is in doubt, we conclude
that such testimony, be it worth much or little, is
admissible as an aid to its solution.

We perceive no other error in the record; but for
that indicated the judgment is reversed, and cause
remanded for a new trial consistent with this opinion.