DAN PRICE *et al.* v. UNITED STATES.

No. 594, Ind. T.    Opinion Filed October 16, 1908.
(97 Pac. 1056.)

1.    EVIDENCE—Threats—Purpose of Reception—Instructions. It is error for a court to charge the jury in a murder case that proof of threats on the part of the deceased are admissible for the purpose of showing whether or not the deceased was the aggressor or the defendant was more likely to be the aggressor, and that evidence of threats is permitted for that purpose, and that alone.

2.    TRIAL—Murder—Manslaughter—Instructions. It is error for the court to charge the jury in a murder case, "You may find the defendant guilty of manslaughter, in which case the court assesses the punishment; the court having it within his power to sentence the accused to confinement in the penitentiary for any length of time not exceeding ten years."

3.    WITNESSES—Impeachment—Cross-Examination. For the purpose of impairing the credibility of a witness, he may be asked, on cross-examination, if he has been convicted of a felony, or any crime involving a want of moral character; but it is improper to ask the witness if he has been indicted, arrested, or imprisoned, before the conviction of said witness, for any offense whatever.

4.    WITNESSES—Failure to Obey Order of Exclusion. A witness who violates the rule of the court, separating the witnesses and excluding them from the courtroom during the trial, by remaining in the courtroom during the most of the time of the trial, is not thereby rendered incompetent as a witness. Such violation can only affect his credibility as a witness, or subject him to punishment for contempt of court.

(Syllabus by the Court.)

*Appeal from United States Court for the Northern District of the Indian Territory; Joseph A. Gill, Judge.*

Dan and Ed Price were, on the 20th day of January, A. D. 1903, in the United States Court, for the Northern District of the

Indian Territory, indicted for the crime of murder, and jointly tried in said court, and by a jury, on the 5th day of October, A. D. 1904, found guilty of the crime of manslaughter, and on the 22d day of October, A. D. 1905, by said court sentenced to imprisonment in the United States penitentiary at Fort Leavenworth, Kan., for the period of three years, and that each pay a fine of $100 and costs. Reversed.

*William P. Thompson* and *Preston S. Davis,* for appellants On the question of improper charge relative to threats by deceased: *Monroe v. State,* 5 Ga. 85; *Brown v. State,* 55 Ark. 593; *State v. Dodson,* 4 Or. 65; *Garner v. State,* 28 Fla. 113; *State v. Alexander,* 66 Mo. 148; *Sparks v. Com.,* 89 Ky. 644; Rice on Evidence, vol. 3 (criminal) 1893. secs. 362 to 370; *Powell v. State,,* 53 Ala. 1; *State v. Evans,* 33 W. Va. 417; *Wood v. State,* 92 Ind. 269; *White v. State,* 30 Tex. App. 652; *Palmore v. State,* 29 Ark. 262. On the question of improper charge as to court's power to assess punishment: *Parmentr v. U. S.,* 98 S. W. 340 (U. S. Ct. Ap. for I. T.); *Stancliffe v. U. S.,* 5 Ind. Ter. Rep. 495; *Taylor v. U. S.,* 98 S. W. Rep. 123 (U. S. Ct. Ap. I. T.); Mansfield's Digest, sec. 2283.

*W. C. Reeves,* Assistant Attorney General, for appellee.

BAKER, JUDGE. An appeal was duly prosecuted in the United States Court of Appeals for the Indian Territory, and this case was pending in that court when the state of Oklahoma was admitted into the Union. Under the provisions of the enabling act and the Constitution of the state of Oklahoma, this case was duly transferred to the Supreme Court of Oklahoma. Upon the creation of this court the Supreme Court duly transferred the case to this court.

Before deciding this case the court desires to call the attention of counsel in this case to the fact that in the brief of appellants many references are made to the record without giving the court the benefit of the page of the record referred to. This necessarily entailed a great deal of additional work, which could easily have been avoided had counsel exercised more care in the preparation of their brief. We sincerely hope that counsel, in

cases in this court, will aid us in the examination of records in the cases before it by stating in each instance the page of the record to which they desire to call the court's attention.

In this case the Attorney General filed the following confession of error: "Comes now the Attorney General of the state of Oklahoma, and states to the court that in his opinion the trial court in the above-entitled cause committed reversible error in giving the instructions complained of in assignments of error numbered 42 and 43"—which charges are as follows:

"Gentlemen, proof of threats on the part of the deceased are admissible to you for the purpose of showing whether or not the deceased was the aggressor or the defendants were more likely to be the aggressors. The evidence is permitted for that purpose, and that alone." "Third, you may find the defendants, or either or both of them, guilty of manslaughter, in which case the court assesses the punishment, which would be not to exceed 10 years."

The Attorney General was right in confessing error in connection with said assignments, for the reason that the court below did err in this charge, referred to in said assignments numbered 42 and 43, and that, by reason of said confessed error, this case must be remanded for new trial; but, notwithstanding said confessed error, there are a number of other meritorious assignments of error that, in the opinion of this court, should be passed upon at this time, believing that the ends of justice will best be subserved thereby.

The first assignment of error herein relates to the charge of the court, and is disposed of by the confession of error.

The court finds error in the second assignment. The verdict is contrary to law.

There is no error in the third assignment, for there is evidence to sustain the verdict.

This court is of the opinion that the court below erred 'in not sustaining the challenge of appellants to the entire panel of the petit jury; but, inasmuch as by the terms of the enabling act passed by Congress, putting into force the jury system of the

territory of Oklahoma over the entire state, this question cannot come up in future trials in this state, and for that reason no further attention to this assignment of error is deemed necessary. This applies also to assignments of error numbered 7 and 8.

In the ninth assignment of error appellants complain of the rulings of the court below, wherein the court admitted certain testimony offered by the government, over the objection of appellants and refusing to allow appellants to introduce certain testimony offered by them, and to which rulings of the court appellants duly excepted. All of these exceptions are directed either to the direct testimony or the cross-examination of the following named Witnesses: J. E. Patterson, Mrs. Sophia Patterson, John Partain, Sam Price, W. R. Thompson, Robert Williams, F. M. Davis, F. Downs, Mrs. F. A. Downs, J. A. Patterson, Roe Cunningham, Della Vanbibber, Ed. Price, J. M. Crump, and James Walker. After carefully reading the testimony of all the witnesses above named, this court fails to find prejudicial error in the rulings of the trial court respecting the same.

Objection and exception having been made by the appellants to the testimony of Dr. W. A. Day, as shown by page 231 of the printed record, and feeling that this case will perhaps be tried again in the court below, and that this testimony may have an important bearing in such trial, we, at this time, give our views regarding admissibility of such testimony. Dr. Day is asked this question: "Did he [referring to the deceased] make the statement to you, or in your presence, concerning the facts of the killing, how it occurred?" To this question appellants made the following objection:

"The appellants object to the question, for the reason the deceased would not be a competent witness under oath to appear and testify before a court of justice; that any statement he might have made, whether under oath or otherwise, would not be admissible, for the further reason that under our law a man having been convicted of the crime of larceny, is not a competent witness before a court of justice."

And while this question was not answered by the witness or passed upon by the trial court, this court assumes, from the testi-

mony of the witness Day contained in the record, that it was
for whose murder the appellants were tried. It is clear from the
record that the objection was made on the ground of the incom-
petency of the testimony, by reason of the conviction of Qualls
on a charge of larceny. At the time of the trial of this case in
the court below sections 2859 and 2902 of Mansfield's Digest
of the laws of the state of Arkansas, were in force in the Indian
Territory. The first, relating to incompetency of witnesses, reads
as follows: "The following persons shall be incompetent to
testify: Persons convicted of a capital offense, or perjury, sub-
ornation of perjury, burglary, robbery, larceny, receiving stolen
goods, forgery or counterfeiting, except by consent of parties"—
the second, relating to the impeachment of witnesses, reading as
follows: "A witness may be impeached by the party against
whom he is produced, by contradictory evidence, by showing he
has made statements different from his present testimony, or by
evidence that his general reputation for truth and immorality
renders him unworthy of belief, but not by evidence of particular
wrongful acts, except that it may be shown by the examination
of the witness, or record of a judgment that he has been convicted
of a felony." In view of the statutes just quoted, if the objection
to the testimony of Dr. Day was based upon the first statute—
that is to say, that Qualls was incompetent by reason of his con-
viction for larceny (and from the statement of counsel in object-
ing to the question above referred to, that was the ground)—the
record should show (in the absence of the consent of the parties
to such testimony) a judgment of conviction or an exempli-
fied copy thereof, if obtainable. In the absence of such proof of
conviction the testimony of Tom Qualls would be competent,
and his dying declaration (if otherwise admissible) would like-
wise be competent, and it would be the duty of the jury to con-
sider such conviction in connection with his testimony (or his
dying declaration) in determining the weight, if any, to be given
to his testimony, notwithstanding his conviction. This rule of
law is sustained in the case of *Bise v. United States,* 144 Fed. 374,

74 C. C. A. 1, an Indian Territory case decided by Judge Vande-venter, of the Eighth United States Circuit Court of Appeals.

It will be observed by reading the case just cited that the defendant on the trial objected to the testimony of a witness, for the reason that the witness had been convicted of a felony. The trial court inquired whether the objection was for the purpose of impeaching or disqualification. Upon receiving an answer that it was for the purpose of disqualification, the court held: "In the absence of a controlling statute on the subject, the incompetency of the witness by reason of his prior conviction of a felony cannot be shown upon his examination, but only by the production of the record, or an exemplified copy of it"—the court in said case citing 1 Greenleaf on Evidence (14th Ed.) §§375-457, 2 Wigmore on Evidence, § 1270, and many other authorities; and cites 50 Cent. Dig. §§ 1161, 1162, for cases in point. The case of *Vance v. State,* 70 Ark. 277, 68 S. W. 37, is particularly instructive on this point, because both of the statutes above quoted are referred to in said case, and shows their distinction, and clearly defines the meaning and use of each, citing *Southern Ins. Co. v. White,* 58 Ark. 277, 24 S. W. 425; *Scott v. State,* 49 Ark. 156, 4 S. W. 750; *Holder v. State,* 58 Ark. 473, 25 S. W. 279; *Carr v. State,* 43 Ark. 99, and *Anderson v. State,* 34 Ark. 257. This question was also fully discussed and decided by this court in the case of *Thomas Slater v United States, ante,* p—. and will be followed by this court hereafter.

This brings us to the testimony of J. E. Cox, page 243 of the printed record. The record shows that the witness Cox was called by appellants and sworn as a witness. The prosecution objected to his testifying, for the reason that he had been in the court-room throughout the entire trial of this case, notwithstanding the court, at the commencement of the trial, enforced the rule excluding the witness from the courtroom during the trial. The court below erred in sustaining the objection to the the testimony of Cox. The fact that he was in the courtroom during the trial, not having been subpoenaed as a witness, and not knowing that he was going to be called as a witness, did not render him incompe-

tent as a witness. If Cox had been subpœnaed as a witness in this case before the trial, or knew, at the commencement of the trial, that he was to be called as a witness, and, in violation of the rule of exclusion, remained in the courtroom during the trial, in the opinion of the court he would not have been disqualified as a witness. His remaining in the courtroom in violation of said rule might, however, be used in discrediting him as a witness, and subject him to a reprimand by the court and punishment for contempt, but it would not render him incompetent as a witness. The jury had a right to hear this evidence and pass upon its weight and credibility.

Coming now to the consideration of the testimony of David Price, father of appellants, shown on page 235 of the printed record, where said witness was asked by appellants: "Q. After the arrest and trial and conviction of Tom Qualls, were 'there any statements or threats against you or your boys communicated to you as having been made by Tom Qualls? A. Yes, sir." Mr. Turner, for the prosecution, said: "If the court please, this witness answered the question about the threats before I had an opportunity to interpose my objection. I desire the court to instruct the jury that they are not to consider that answer." The court:

"Gentlemen of the jury, in reference to the threats, there have been no threats shown in this case, and before you can show them to have been communicated, they must be shown to have been made, and there are no threats shown to have been made in this case in any way, shape, or form, and this man's testimony that they were communicated is not evidence at all, and should not be considered by you for any purpose."

To this ruling of the court appellant duly excepted. Counsel for appellants should have placed in the record the words, or substance of the words, which constituted threats which they offered to prove. But, as this case will be remanded for a new trial, and as this question will doubtless come up again upon such trial, we deem it best to give our views with reference to the matter of threats. Taking the ruling of the court on this question

in consideration with the charge to the jury in this case upon the subject of threats, we apprehend that the court below held that threats, made on the part of the deceased, Tom Qualls, were admissible for but one purpose alone. Quoting from the court's charge to the jury in this case: "Proof of threats on the part of the deceased are admissible to you for the purpose of showing to you whether or not the deceased was the aggressor or the defendants were more likely to be the aggressor. The evidence is permitted for that purpose, and that alone." Threats made by the deceased against the accused are admissible, upon the trial of the accused for the killing of the deceased: To show that the deceased manifested an angry and revengeful spirit towards the prisoner, and a determination to do violence to his person; to shed light upon the mental attitude of the prisoner towards the deceased when the homicide occurred; to show a mitigation of the offense charged; to show the condition of the mind of the deceased, and the condition of mind of the defendant at the time of the homicide; to show the purpose and motives of the deceased in making the attack; to show whether or not the killing was done in self-defense; to show reasonableness of the fears of the defendant at the time of the homicide that he was in danger of losing his life, or of receiving great bodily harm, at the hands of the deceased; to show who was the aggressor; and, as part of the *res gestae,* where they tend to excuse or palliate the conduct of the accused; and to establish the state of feeling entertained by the deceased towards the accused. Uncommunicated threats are evidence of the mental attitude toward the prisoner. Communicated threats shed light upon the mental attitude of the prisoner toward the deceased when the homicide occurred. Both are clearly admissible. *Dunn v. State,* 2 Ark. 229, 35 Am. Dec. 54; *Harris v. Same,* 34 Ark. 469; *Brown v. Same,* 55 Ark. 593, 18 S. W. 1051; *State v Evans,* 33 W. Va. 417, 10 S. E. 792; *Wood v. State,* 92 Ind. 269; *White v. Same,* 30 Tex. App. 652, 18 S. W. 462; *Howell v. Same,* 5 Ga. 48; *Howard v. Same,* 23 Tex. App. 265, 5 S. W. 231; *Alexander v. Same,* 25 Tex. App. 260, 7 S. W. 867, 8 Am. St. Rep. 438; *Garner v. Same,* 28 Fla.

113, 9 South. 835, 29 Am. St. Rep. 232; *Sparks v. Commonwealth,* 89 Ky. 644, 20 S. W. 167; *Hart v. Same,* 85 Ky. 77, 2 S. W. 673; 7 Am. St. Rep. 576; *Stokes v. People,* 53 N. Y. 174, 13 Am. Rep. 492; *State v. Sloan,* 47 Mo. 604; 3 Rice on Evidence (Criminal) Ed. 1893, §§ 362-370; *Logan v. State,* 17 Tex. App. 50. The court erred in taking this testimony from the jury, and not allow-·ing the witness to testify to such threats.

For the various errors pointed out this case is reversed and remanded.

FURMAN, Presiding Judge, and DOYLE, Judge, concur.