Statement of the Case.
MONROE, J.
The sole question to be decided in this case is presented by the following bill of exception, to wit:
“Be it remembered that, upon tbe trial of this cause, the accused, being on trial for manslaughter, charged with killing Lamar Norwood, the defense being self-defense, after introducing evidence tending to show self-defense and the-attitude of the deceased at the time of the fatal encounter, the witness Thomas A. Charlton was introduced and sworn on the part of defendant *789 for the purpose of proving the conduct of the-deceased and threats made by him on the day of and previous to the homicide; it being stated by counsel that the testimony was not offered for the purpose of showing that defendant’s conduct was influenced by the alleged threats and action of the deceased, but only to assist the jury and enable the jury to form its own conclusion as to the attitude of the deceased and as to who was the aggressor in the encounter which resulted iu the homicide. * * * Said statement by said witness, together with the minute of said offering, the objection thereto by the state, and the ruling of the court, are hereto annexed * * * as parts of this bill,” etc.
The note of evidence reads:
“On the trial of this case, witness Thomas A. Charlton, who was offered by defendant and sworn by the clerk — the jury having been retired — made the following statement:
“ T was working at Boyle’s saloon, in Zachary, La., on the Saturday that the tragedy occurred. Lamar Norwood came in there and asked me to come in the back room — he wanted to see me, he said. He says, “Tom, I want you to get me a gun.” I told him X had no gun, and, if I had one, I told him X wouldn’t give it to him; that it might get us both in trouble. He said he didn’t want me to lota him the gun; that he had money to pay for it and would buy it. lie said he saw Mr. Barks-dale’s horse there, and he knew he was there, somewhere. He says: “He is dodging from me, and, when I meet him, I am going to tackle him.” And I told him: “Lamar, the town is full of people, and it is a bad day; you had better wait until some other time.” And he asked me, if he got in a fight, if I would see that it was fought to a finish — 'till one of them got whipped. He said he knew Barksdale had a pistol, because he always carried one.’
“The foregoing statement was offered, * * * not for the purpose of showing that the defendant’s conduct was influenced by the alleged threat and action of the deceased, but only to assist the jury and to enable it to form its own conclusion as to who was the aggressor in the encounter which resulted in the homicide, the defendant’s plea being that of self-defense, and objected to on the ground that, the defendant being charged with manslaughter, no evidence of previous ill will, or hostility, on the part of either is relevant as illuminating the offense; that the alleged statement is not a part of the res gestae, having taken place at a different place and time; and that said threats were never communicated to accused. The objection was sustained by the court.”
And the bill was reversed.
Opinion.
The statements of the deceased which defendant desired to prove were not offered to show any general ill will of the deceased toj the accused, or as part of the res gestte, of as threats communicated to, and influencing' the action of, the accused. They were offered as tending to show that the deceased was-the aggressor in the difficulty which led to-his death, and hence as tending to sustain the plea that the accused, in killing him, acted in-defense of his own life. It is clear that, if these facts had been otherwise proved to the satisfaction of the jury, the accused could not have been convicted. It was therefore of the utmost importance to him, as bearing' upon the question who made the attack, that' the jury should have been informed that on the day of and before the fatal encounter the deceased endeavored to obtain a “gun,” saying that he knew that the accused was in town and was dodging him, and that, when-he met him, “he was going to tackle him,” since, being thus informed from the lips and conduct of the deceased that he intended to' attack the accused as soon as he should meet him, and that he was endeavoring to prepare' himself with a deadly weapon for that purpose, and the encounter having taken place' on the same day, the jury might have inferred that the intention so expressed was carried into execution, that the deceased did make the attack, and that the accused took his life in lawfully resisting the same. The Supreme Court of the United States, in dealing with the question here presented, have saidr
“Although there is some conflict of authority as to the admission of threats of the deceased against the prisoner in a case of homicide, where the threats have not been communicated to him, there is a modification of the-doctrine, in more recent cases, established by the decisions of courts of high authority, which is very well stated by Wharton in his woi’k on-Criminal Law, § 1027: ‘Where the question is as to what was the deceased’s attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to the defendant. The evidence is not relevant to show the quo animo of the defendant, but it may be relevant to show that, at the time of the meeting, the deceased was seeking- the defendant’s- *791 life.’ ” Wiggins v. People of Utah, 93 U. S. 465, 23 L. Ed. 941.
See, also, State v. Lindsey, 122 La. 375, 47 South. 687; Brown v. State, 55 Ark. 593, 18 S. W. 1051; Wilson v. State, 30 Ela. 234, 11 South. 556, 17 L. R. A. 654; May v. State, 90 Ga. 793, 17 S. E. 108; State v. Helm, 92 Iowa, 540, 61 N. W. 246; Young v. Com., 42 S. W. 1141, 19 Ky. Law Rep. 929; State v. Hopper, 142 Mo. 478, 44 S. W. 272; Hart v. Com., 85 Ky. 77, 2 S. W. 673, 7 Am. St. Rep. 576; Sparks v. Com., 89 Ky. 644, 20 S. W. 167; State v. Lee, 66 Mo. 165; Roberts v. State, 68 Ala. 156; Bell v. State, 66 Miss. 192, 5 South. 389; 21 Cyc. 967; Enc. of Ev. vol. 6, p. 787.
The verdict and sentence appealed from are therefore set aside and annulled, and the case •remanded to be further proceeded with according to law.
See dissenting opinion of NIOHOLLS, J., 48 South. 265.
BREAUX, O. J., concurs in dissenting opinion.