## GEORGE TURNBULL v. STATE.

No. A-972.   Opinion Filed December 31, 1912.

(128 Pac. 743.)

1.  **HOMICIDE—Evidence—Admissibility.** In the trial of a person charged with murder, when the question of who was the aggressor in the fatal difficulty becomes material to the issues, the state of mind of the deceased at the time of the homicide and immediately prior thereto with reference to the accused may become material, and, when it does, testimony tending to establish a hostile state of mind and mental attitude on the part of the deceased toward the accused should be admitted.

2.  **SAME—Instructions—Self-Defense.** (a) When, in the trial of a person charged with murder, it becomes necessary for the trial court to instruct the jury on the doctrine of seeking or provoking the difficulty, and the proof discloses that the accused did any act or thing which he had a right to do, which could be reasonably construed by the jury to come within the general terms of the court's charge, it is necessary for the court to tell the jury what acts under the law would be justifiable, and discriminate as to acts unlawful and which would deprive him of the right of self-defense, leaving to the jury to determine whether or not, under the facts and the law, the acts were lawful or otherwise. When this is not done and instructions are given which, reasonably construed, deprived the accused of the right of self-defense, if he by any willful act of his own, lawful or unlawful, brought on the difficulty, a conviction cannot be upheld by this court.

    (b) Under the facts disclosed by the record in this case, the court should have told the jury the nature or quality of the

provocative act or acts upon the part of the accused which would operate to limit or destroy the right of self-defense.

3.     SAME—Evidence—Admissibility. In the trial of a person charged with murder, it is error for the trial court to admit evidence tending to establish the fact that the person at whose house the homicide occurred did not request the accused to do certain acts which he had a right to do whether in his own home or in the home of another.

(Syllabus by the Court.)

*Appeal from District Court, Johnston County;*
*A. T. West, Judge.*

George Turnbull was convicted of manslaughter, and brings error. Reversed and remanded, with directions to grant a new trial.

*McPherren & Abbott, W. M. Lucas, Cullett & O'Bryan,* and *Walter J. Turnbull,* for plaintiff in error.

*Cornelius Hardy,* for the State.

ARMSTRONG, J.   The plaintiff in error, George Turnbull, was tried in the district court of Johnston county at the June, 1911, term on a charge of murder and convicted of manslaughter in the first degree. His punishment was fixed at imprisonment in the state penitentiary for a period of ten years. From the judgment imposing this sentence, he has perfected his appeal in this court.

The homicide out of which this conviction grew occurred at the home of O. R. Taylor in Johnston county on the 9th day of April, 1910. It appears that the accused spent the day in the "bottoms" hunting his horses and cattle; that he got home about sundown; that his wife and children had spent the day in the town of Milburn, returning home late in the afternoon; that the deceased and certain companions spent the afternoon in the town of Milburn and were drinking; that about sundown the deceased with Os Whatley, Bert Helms, and others went to the home of the accused where the deceased and accused had some trouble, and later all went to the home of Taylor to a dance. The accused and deceased took several drinks together leaving for the dance and some after arriving at Taylor's, and both were pretty

well intoxicated. During the evening the deceased went into the house where the accused, his wife and children, and Mrs. Taylor were, and used vile and profane language. The accused was sitting by the fire when this language was used and got up, walked over to the deceased, laid his hand on his shoulder, and asked him to "cut out the language." Whereupon the deceased knocked him down, got on him, and was beating him in the face. The proof on the part of the accused tends to show that deceased was using a knife and beating and stabbing him; that on the part of the state tends to show that deceased was beating the accused with his fists. The weight of the testimony on this point, however, appears to be with the contention of the accused. While the accused was lying on the floor upon his back and the deceased was on him beating him, the accused drew a revolver and fired one shot into the body of the deceased, which proved fatal. The record discloses numerous acts of misconduct upon the part of the deceased on the evening of the tragedy, which we do not deem it necessary to recount for the purposes of this opinion. Many assignments of error were briefed and argued on behalf of the accused and supported by numerous citations of authorities. Counsel for the state has filed an elaborate abstract of the testimony, but has not undertaken to answer the legal propositions advanced in the brief and argument of the accused.

The first, fourth, seventh, eighth, ninth, and tenth assignments of error were jointly briefed and argued, and are based upon a ruling of the court excluding certain testimony offered by the accused tending to establish the state of mind of the deceased on the evening of the homicide and his mental attitude toward the accused. The trial court erred in excluding this testimony; it should have been admitted. See *Price v. United States,* 1 Okla. Cr. 291, 97 Pac. 1056; Wharton on Homicide (3rd Ed.) sec. 249.

The only other assignments which we deem it necessary to discuss in this connection were briefed and argued jointly as 15 to 19, inclusive, in which the accused complains of the action of the trial court in giving instructions numbered 11, 12, 13, 14, and 16.

Instruction No. 11 is as follows:

"The court instructs you that every person has a right to act in his own necessary self-defense, and where a person is in a place where he has a right to be and is not the aggressor in bringing on the conflict, and is assaulted by another person in such a way as to place him in danger of death or serious bodily harm, a person thus assaulted is not bound to retreat, but on the contrary may stand his ground and repel the danger in which he is placed with (such) force as will repel the attack and protect himself from serious bodily harm, and when it is necessary to protect himself from the assault or from receiving great bodily harm even to take the life of his assailant; and such person will not be held responsible criminally for his act or acts in self-defense, from real and honest convictions as to the character of the danger, induced by reasonable evidence, although he may be mistaken as to the extent of the actual danger. But on the other hand the law does not permit a person to voluntarily seek or invite a combat or put himself in the way of being assaulted in order that when he is hard pressed he may have a pretext to take the life of his assailant. The right of self-defense does not imply the right of attack, and will not avail anything where the difficulty was sought for or induced by the defendant by any willful or unlawful act of his, or where he voluntarily of his own free will enters into it, and this is true no matter how imminent his peril may become during the progress of the affray, the necessity being of his own creation will not operate to excuse him; nor is any one justified in using any more force than is necessary to get rid of his assailant, but if he does not bring on the difficulty or provoke it he is not bound to flee to avoid it, but may resist with adequate and necessary force until he is safe."

Instruction No. 13 is as follows:

"But on the other hand, if you believe from all the evidence in the case that the defendant, George Turnbull, voluntarily sought the difficutly with the deceased, Luther Campbell, in which the deceased lost his life, and that the defendant provoked, commenced, or brought on the difficulty with the deceased by any willful act of his own, then you are not authorized to acquit the defendant on the ground of self-defense, and this is true no matter how violent his passion became or how hard pressed he was and how imminent his peril became during the affray."

Aside from the puzzling character of instruction No. 11 when it is considered with instruction No. 13, it is the source of serious prejudicial error. The court among other things tells the jury

that if they believed the accused, Turnbull, voluntarily sought the difficulty with the deceased, Campbell, in which the deceased lost his life, and that the accused provoked, commenced, or brought on the difficulty with the deceased by *any willful act* of his own, then they were not authorized to acquit the accused on the ground of self-defense, and that this was true no matter how violent his passion became or how hard pressed he was or how imminent his danger during the affray.

The only act on the part of the accused that can be urged as tending to prove that he sought or brought on the difficulty or invited the combat, or put himself in the way of being assaulted in order that when he became hard pressed he might have a pretext to take the life of his assailant, was his act in placing his hand upon the shoulder of the deceased and requesting him to "cut out" his vile, obscene, and profane language in the presence of the wife and children of the accused and other women in the room. There is no question but that the accused was in a place where he had a right to be; that he was sitting peaceably by the fire, and in our judgment, under the proof, did no more than he had a right to do, or than it was his duty to do, when he got up, walked over to the deceased, and asked him to cease the use of the indecent and profane language in the presence of the women. In giving the foregoing instructions the court eliminated from the jury every element of the provocative act necessarily required to be present in said act in order to destroy the right of self-defense. The court should have told the jury the nature and quality of the provocative act or acts upon the part of the accused which would limit or destroy the right of self-defense. Many of the trial courts apparently do not seem to realize the serious consequences which necessarily follow the giving of instructions of this character.

In *Gibbons v. Territory*, 5 Okla. Cr. 212, 115 Pac. 129, in discussing a similar instruction, this court said:

"When in a homicide case the state endeavors to show that the defendant sought or brought on the difficulty, and the general rules of law are charged on this phase of the case, the court should define and state what character of acts on the part of the accused would deprive him of the right of self-defense."

This is always essential when there is proof in the record tending to show that the overt act relied upon by the state to establish the contention that the accused provoked the difficulty was an act which he had a right to do. Counsel for the state do not contend that the accused in this case did not have a right to ask the deceased to refrain from the use of the language complained of, and to remonstrate with him in the manner the proof tends to show he did. The court should have told the jury just how far the accused could go before he would forfeit his right of self-defense and be held the aggressor or liable as unwarrantedly provoking the difficulty under the law.

It is said by Wharton in his work on Homicide, sec. 320 (3d Ed.):

"The rule that to justify homicide as committed in self-defense the slayer must not have been the original aggressor, and must not have been at fault in bringing on the difficulty, applies in cases where there was no felonious intent on his part at the time he entered into or provoked the difficulty as well as where such intention existed. And if the slayer provoked the combat, or produced the occasion for it, in order to have a pretext for killing his adversary or doing him great bodily harm, the killing would be murder no matter to what extremity he may be reduced. So, if the slayer intended to provoke a difficulty, it is immaterial whether his acts were such as to be reasonably calculated to provoke one or not. And this is particularly the case where the intent was a deliberate and premeditated one. A person would be considered as provoking or bringing on a difficulty in cases where he seeks another and brings on a difficulty with him for the purpose of wreaking malice upon him. And this is so though the intent was simply to engage in a hard combat and not to kill. If the slayer had no felonious intent and did not intend to provoke a difficulty, intending only slight punishment for some other slight offense, the final killing in self-defense will be manslaughter only, the distinction being between the right of perfect and imperfect self-defense; and this is so though his acts were reasonably calculated to provoke a difficulty. And the slayer must have willingly and knowingly used language or committed an act reasonably calculated to lead to an affray or deadly conflict in order to preclude him from pleading self-defense; and, unless the acts are clearly calculated or intended to have that effect, the right to plead self-defense exists. And this is so though he intended to provoke a difficulty with intent to kill; the mere purpose or intent

unaccompanied by an overt act is not enough. So a person committing a homicide should not be deprived of his right of self-defense where the occasion for killing was accidentally, unintentionally, or innocently produced. Nor is a person committing a homicide precluded from pleading self-defense upon the ground that he was the aggressor where the act which gave offense and led to the difficulty was a lawful act."

The Supreme Court of Tennessee, in discussing the principle here involved, in the case of *Foutch v. State,* 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687, after stating the theories of the accused and of the state, said:

"These were the respective theories of the state and defendant, supported by evidence tending to show the facts as each side claimed them to have existed. Under these circumstances, and upon these facts, the circuit judge charged, among other things, as follows: 'If a party brings on a quarrel with no felonious intent or malice or premeditated purpose of killing or doing bodily harm, and a difficulty results in which the person with whom he brought on the quarrel is killed, it will not be murder, let the result be what it may.' But '* * * if one provokes a combat or produces the occasion to kill, and kills his adversary, it is murder, no matter to what extremity he (the slayer) may have been reduced in the combat.' The first proposition is not technically accurate. The judge should have said: 'If a party brings on a quarrel with another with no felonious intent or malice or premeditated purpose to kill or do great bodily harm, and a difficulty results, in which the person with whom he brought on the quarrel assaults the provoking party, or by overt act so menaces him as to endanger his life or threaten him with great bodily harm, or so as to induce the belief of the party thus assailed or menaced that he was in danger of death or great bodily harm, and upon reasonable grounds, and he thereupon kills his assailant or menacing adversary, it is not murder.' The second proposition charged by the trial judge is contrary to the first and is not the law. It is true that such statements are to be found in many books that if one be the 'aggressor' or be 'in fault' or 'provokes a difficulty' he cannot rely upon the plea of self-defense. But such general statements are only true when taken in the limited sense in which they must be understood, and with the qualifications with which judicial utterances that gave them existence have guarded their application. In order to make a man guilty of murder, who is the 'aggressor' or 'in fault' or who 'provokes a difficulty' in which his adversary is killed, he must have

provoked it with the intent to kill his adversary or do him great bodily harm, or to afford him a pretext for wreaking his malice upon his adversary. *Smith v. State*, 8 Lea (Tenn.) 402; *Daniel v. State,* 10 Lea (Tenn.) 261; *Brown v. State,* 58 Ga. 212; *Hash v. Commonwealth,* 88 Va. 172, 13 S. E. 398; *Massie v. Commonwealth* (Ky.) 24 S. W. 611; *Cotton v. State,* 31 Miss. 504; *Radford v. Commonwealth* (Ky.) 5 S. W. 343. In order to deny such party the right to rely upon the plea of self-defense, it must appear that he was the 'aggressor' or 'in fault' or 'provoked the difficulty' in such way and with such intent as the law contemplates in the use of those terms. It is not every 'aggression' which produces a difficulty that is an unlawful one within the meaning of this phrase, nor is it every 'fault' which a man might commit that precludes him from defending himself when violently assaulted or menaced, nor is it every 'provocation of a difficulty' which robs him of the right of self-defense. Cases already cited and hereinafter cited illustrate the true meaning and show the sense in which these words must be understood. They are really intended to imply the same thing, and what they do mean may be best indicated by suggestion of some things they do not mean, taking them up separately: First, as to the 'aggressor.' It is not intended that every one shall be held in law to be an aggressor who says something provoking to another, which does cause a difficulty, for oftentimes such an aggression is a just one and sometimes a necessary one. * * * After all the aggression, the fault, or the provocation depends upon its character and its intent. If it is an assault, or the menace of one by an overt act, or the provocation of a difficulty with intent to inflict death or great bodily harm in the event it is resisted, made of malice to bring about that result and enable the provoking party to wreak his malice on the assailant, that is an 'aggression' or 'fault' and a 'provoking of a difficulty' within the legal sense and meaning of the terms. If the 'combat is provoked' or 'the occasion to kill is produced,' in the language of the charge, on this account, with this intent and for this purpose, defendant cannot rely upon the plea of self-defense."

The accused complains that the trial court erred in permitting the state to show that O. R. Taylor, at whose house the trouble occurred, did not request the accused to remonstrate with the deceased relative to the misconduct. This testimony was evidently admitted upon the theory that the accused had no right to remonstrate with the deceased concerning his misconduct without having been first requested to do so by Taylor or his wife. This

testimony should not have been admitted. A man does not have to be requested by some one else to remonstrate with another for misconduct in the presence of his own family and other respectable women by the use of the character of language the deceased was indulging in at the time of this difficulty. While the use of the language would not justify the accused in perpetrating a deadly assault upon the deceased, yet he was justified in remonstrating with him and requesting that he desist from the use of the character of language disclosed by the record; and, so long as he did no more than place his hands on the deceased and ask him to discontinue the use of such language, he could not be held to have forfeited his right of self-defense as being the aggressor or liable under the doctrine of provoking the difficulty. The question of the necessity of the force used after the deceased assaulted the accused is not here under consideration, and is a question solely for the jury.

For the errors indicated, the judgment is reversed, and the cause remanded, with direction to grant a new trial.

FURMAN, P. J., and DOYLE, J., concur.