## PETE BRANDLEY v. STATE.

No. A-2683.  Opinion Filed June 29, 1918.

(173 Pac. 661.)

1. **HOMICIDE—Instructions—Applicability.** When a person is tried upon a charge of murder, he is entitled to have all of the law applicable to his defense clearly stated to the jury in the charge of the court.

2. **SAME—Provocation of Difficulty.** When the law of 'seeking" or "provoking" the difficulty is invoked in the trial of a homicide case, it is the duty of the court to give the law applicable to the facts developed. In many instances the abstract statement of the doctrine is sufficient. In others the peculiar facts developed render it essential that the doctrine be amplified, so that the jurv may determine without being misled the rights of the accused as well as those of the deceased under the particular circumstances they are called upon to consider. The facts in the case under consideration are reviewed, and **held** to bring it within the rule of law laid down in **Turnbull v. State**, 8 Okla. Cr. 459, 128 Pac. 743, and **Swan v. State**, 13 Okla. Cr. 546, 165 Pac. 627.

*Appeal from District Court, Caddo County;*

*Will Linn, Judge.*

Pete Brandley was convicted of manslaughter in the first degree, and he appeals. Reversed.

*C. H. Carswell,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Pete Brandley, was tried at the September, 1915, term of the district court of Caddo county on a charge of murder, and convicted of manslaughter in the first degree. The punishment was fixed at 14 years in the state penitentiary.

The information charged Pete Brandley and Kate Brandley, husband and wife, with the murder of John Gray on the 3d day of August, 1914.

John Gray was at the time of the homicide a tenant on a farm owned by Pete Brandley. Brandley had reserved the right to use wood from the timber growing on the premises rented to Gray. The lease under which Gray occupied the premises was for the year 1914. In June Brandley went on to the premises for the purpose of securing a load of wood. An argument ensued, and Gray ordered him to leave. He refused to go, and Gray went to his house a short distance away and procured a gun. Upon seeing Gray returning with the gun, Brandley ran away, and as he ran Gray shot at him, several bullets taking effect. Gray was arrested and charged with shooting Brandley with intent to kill and released on bond. Some time in July Gray went to the grain fields with a threshing outfit. Brandley apparently heard that he was away, and went back to the farm to procure wood. His wife went with him. Gray had returned home on the previous night, and as the Brandleys drove into the place to procure the wood Gray came up. It appears that he had been on the farm occupied by Brandleys a short time before, and that Mrs. Brandley had ordered him to get off the premises and stay off. When he came up he began an argument with Mrs. Brandley about ordering him off of their premises and used abusive language, ordering the Brandleys to immediately leave the farm occupied by him. In the heat of the argument Brandley agreed that he would leave the place by going through a nearby gate. Gray, using vile language, said, "You will have to go out the way you came in," and got off of his horse, and, according to the Brandleys, began shooting at them with a pistol. Brandley picked up a shotgun which was lying in the wagon loaded with bird shot and fired at Gray, who was standing on the opposite side of his horse from where Brandley

stood in the wagon. A number of the shots struck the horse and the body of Gray. After this shot was fired, according to Brandley, Gray ran to a nearby tree and shot at them again. Brandley fired another shot with the shotgun, and Gray fell near the tree and died before assistance reached him. Relatives and friends of Gray testified that he was unarmed at the time of the shooting; that the pistol which the Brandleys claimed he did the shooting with was at the house and was at no time used by the deceased in the affray. These witnesses, all of whom were very hostile to the defendant, also testified that only two shots were fired; that they were close enough to hear the reports of the guns, and only heard two reports. One relative of Gray said there were three shots fired. The sheriff and deputy sheriff of the county went to the place shortly after the homicide and found a revolver answering the description of the one the Brandleys claimed Gray used. They each testified that it was loaded with two or three fresh cartridges; that the remaining cartridges appeared to have been in the pistol for quite a long time, and that there was sand on the pistol, and that the ground where Gray was killed was sandy soil. These officers also testified that the pistol showed indications of having been recently fired.

The defendants contended that at the time of the homicide they were on their own farm and had a right to be there; that their presence was not for any unlawful purpose, but, on the contrary, they went there to get wood, having reserved the right to do so under their contract with the deceased. They contended that the deceased had threatened repeatedly to kill the plaintiff in error, Pete Brandley, and that he had shot at him on a former occa-

16-14

sion, that he had bought cartridges and made statements in the presence of witnesses to the effect that he expected to kill Brandley if he ever came on the place again, and that many of these threats had been communicated to Brandley. They contended that they thought Gray was away from home at the time they started there to get the wood. There is testimony also given by some relatives of Gray that Mrs. Brandley directed her husband to shoot Gray at the time he was killed. The jury acquitted her, however, and this cause is reviewed on appeal only as to Pete Brandley.

Under this state of facts the court, over the objections and exceptions of plaintiff in error, gave the following instruction:

"You are hereby instructed, gentlemen of the jury, that while the law permits a person to defend against real or apparent danger, such right is defensive, and not offensive, and therefore you are instructed that a person under the law cannot arm himself and invite or provoke a difficulty and thereupon assault and slay his adversary and invoke the right of self-defense. And you are instructed, gentlemen of the jury, if you believe from the evidence in this case beyond a reasonable doubt that this defendant armed himself with a gun and sought the deceased for the purpose of provoking or engaging in a difficulty with the deceased, and in furtherance of such design invited and provoked a difficulty with the deceased, and thereupon shot and killed the deceased, then the defendant cannot invoke the right of self-defense."

No other instruction was given upon this phase of the case or involving the law of seeking or provoking a difficulty. The right of the accused to enter the premises, which belonged to him, for the lawful purpose of procuring wood, and to arm himself for the purpose of defend-

ing against any unlawful assault which might be made upon his person, such assaults having been theretofore made, were not taken into consideration in this instruction, nor any other instruction submitted. The court simply states the law in the abstract covering the doctrine of seeking and provoking a difficulty.

The accused should have had his rights covered by the proper instructions of the court, so that the jury in considering the facts could have weighed and determined the issues under the law applicable to the particular facts developed. There can be no doubt but that this accused had the right to enter the premises to get the wood, nor is there any doubt under the law that he had a right to go upon the premises upon lawful and peaceable missions armed if he desired. The land belonged to him, and so long as his purpose was lawful and no overt act was committed by him which had for its purpose the provoking of a difficulty to give him an excuse for taking the life of his assailant he was within his legal rights. The facts do not indicate that he sought the deceased for the purpose of bringing on the fatal difficulty or for any other purpose, but that he was attending to his own business, molesting no one, accosting no one, engaging in an argument with no one, when the deceased approached him and began an argument and discussion which resulted in the homicide.

In *Turnbull v. State,* 8 Okla. Cr. 459, 128 Pac. 743, the principle involved is discussed and the right of accused set forth. In *Swan v. State,* 13 Okla. Cr. 546, 165 Pac. 627, a lengthy discussion of the principle involved is indulged in and the authorities reviewed fully. The facts in the case under consideration bring the assignment clearly within the doctrine laid down in the Turnbull Case,

*supra,* and followed and elaborated upon in the Swan Case. It is not necessary to discuss this proposition further.

Other assignments relied upon involve no new principle of law. It is therefore unnecessary to consider them.

For the error discussed, the judgment is reversed.

DOYLE, P. J., and MATSON, J., concur.