# D. B. BOYER v. STATE.

No. A-2964—Opinion Filed Sept. 16, 1919.

(183 Pac. 620.)

1.  **APPEAL AND ERROR—Denial of Continuance—Abuse of Discretion—Review.** In order to cause a reversal of a conviction on account of the overruling of a motion for continuance, it must be clearly shown that the court in so doing abused its discretion.

2.  **TRIAL—Remarks of Court.** It is not proper for a court, when passing upon a motion for continuance, in the presence of attending jurors from whom a jury is to be selected to try the case in which the motion is made, to express his opinion that "the motion is simply a ruse to pass the case over."

3.  **HOMICIDE—Information—Manner of Killing—Demurrer.** An information charging, in substance, that a homicide was committed by means of a certain dangerous weapon, to wit, a neck yoke of a wagon, about three feet long, which they and each of them then and there held in their hands, then and thereby inflicting upon the body of the deceased mortal wounds, charges the length of the neck yoke and not the length of the wagon, and that the defendants held the neck yoke and not the wagon in their hands when they struck the deceased said fatal blows, and a demurrer to such information on the ground that it does not charge an offense, because it does not allege "the manner of use, the size of the neck yoke, and the place upon the body of the deceased which was beaten and wounded," was properly overruled.

4.  **SAME—Location of Wound.** Where a homicide is committed by blows inflicted upon the body of the deceased with a neck yoke of a wagon, it is not necessary to charge in an information for such homicide, the particular parts of the body of the deceased upon which said blows were inflicted.

5.  **HOMICIDE—Self-Defense—Instructions.** The instruction given the jury in the instant case as to what facts would deny the defendant the right to avail himself of the defense of self-defense carefully considered, and held not to correctly state the law.

6.  **APPEAL AND ERROR—Conduct of Trial Court—Reprimanding the Defendant's Counsel.** Where the trial court, without just grounds therefor, in the presence of the jury severely reprimands the defendant's counsel, assesses heavy fines against him, and orders that he be committed until said fines are paid, said action and conduct clearly tending to prejudice the defense before the jury, is held reversible error in this case.

7. **WITNESSES—Exclusion of Evidence—Discretion of Trial Court.**
On trial for homicide, exclusion of questions to deceased's wife, a witness for the state, as to character of place at which she had registered under an assumed name, as to whether she had occupied a room there with a named man the night before the trial, offered to show her want of virtue, was not an abuse of court's discretion.

8. **SAME—Admissibility of Evidence—Bias of Witness.** On such trial for murder, her cross-examination as to whether she had executed a power of attorney of her interest in the prosecution, and as to whether she had endeavored to settle it for a money consideration, and failed, was improperly excluded, as it bore on the weight and bias of her testimony and as to her feeling against defendant.

*Appeal from District Court, Tulsa County;*
*George C. Crump, Assigned Judge.*

D. B. Boyer was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

*Woodson E. Norvell,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, D. B. Boyer, hereinafter called the defendant, was informed against jointly with Bill McGinnis for the murder of Claud Rima, tried separately, convicted of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary at McAlester at hard labor for a term of five years. To reverse the judgment rendered, he prosecutes this appeal.

The defendant filed a verified motion for a continuance supported by an affidavit of his attorney's physician, on the ground that his said attorney was physically unfit to undertake the trial of the defendant. The court, in the presence of the attending jurors, remarked:

"That he anticipated that this action would be taken two or three days ago, before this case was called, that Mr. Norvell was in the courtroom two days previous to the call-

ing of the case, in the court's chambers, and the court took judicial notice that when the case was called he got sick all at once, and from the conduct of the attorney just before the case was called, the court is of the opinion that this is simply a ruse to pass the case over. While the court is not a physician, the attorney representing the defendant was in the courtroom all day and in the court's chambers and talked with him, and when the case was called for trial began to complain of feeling bad. It may be the excitement of this case that has unnerved him. This court gave the defendant from last Saturday until to-day to procure other counsel, and if the defendant didn't procure counsel, it is his fault."

The affidavit of the physician filed in support of said motion in substance was: That said attorney—Mr. Norvell —was at the bedside of his wife when a serious operation was performed on her, and for the succeeding 48 hours was almost in constant attendance upon her at the hospital; that anxiety, loss of sleep, and strain upon Mr. Norvell had greatly and seriously exhausted his vitality, and in consequence he was not at this time able to undergo any prolonged strain upon his mind, body, or nerves; that any continued draft upon his decreased vitality might, and probably would, result in complete nervous exhaustion and total collapse.

An exhaustive examination of the defendant developed that the defendant had employed Mr. Norvell as his attorney from the first of the case, and frequently conferred with him, that he had paid him $1,500 on account of his fee, and that he was unable to employ another attorney by reason of the fact that he had only $2.50 in his pocket and about $25 owing him, and had no other property except two horses, and that he had made no effort to get other counsel since the Saturday before.

Mr. Norvell being absent from the courthouse, the court appointed two attorneys to represent the defendant, overruled the motion for a continuance, to which the defendant excepted, and the selection of the jury began. Thereupon Mr. Norvell appeared in the courtroom and requested that the stenographer read the list of jurors that had been excused and the peremptory challenges, to which the court replied, "The record shows." Mr. Norvell said he could not read the stenographer's notes, to which the court replied:

"You can read the long hand made by the clerk. I have had a few cases myself and know how they run. If attorneys play fair with the court, the court will play fair with the attorneys."

Thereupon Mr. Norvell said:

"I do not understand what your honor means by that. Your honor, I have sat on that very seat myself and tried men for murder, and no member of the bar excels me in respect for the court."

The court then said:

"Well, I don't know the bar very well. Call the jury."

Thereupon the selection of the jury was completed and the trial proceeded, with Mr. Norvell acting as attorney for the defendant.

The charging part of the information is as follows:

"D. B. Boyer and Bill McGinnis, on the 22d day of September, A. D. 1915, in Tulsa county, state of Oklahoma, and within the jurisdiction of this court, did commit the crime of murder in manner and form as follows, to wit: The said D. B. Boyer and Bill McGinnis, while acting together and in concert with each other, then and there willfully, unlawfully, feloniously, and maliciously, and without authority of law, and with a premeditated design then and

there upon the part of the said defendants and each of them to effect the death of one Claud Rima, strike, beat and wound the said Claud Rima with a certain dangerous weapon, to wit, a neck yoke of a wagon, about three feet long, which they and each of them then and there held in their hands, then and there and thereby inflicting upon the body of the said Claud Rima mortal wounds, from which he, the said Claud Rima, then and there languished and died, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant demurred to the information upon the ground, among other grounds, that the information fails to state facts sufficient to constitute a public offense. The court overruled the demurrer, and the defendant excepted.

The uncontradicted material evidence is: That a teamster driving a wagon loaded with whisky drove into Phillips Lake, lost his load of whisky, broke his coupling from his wagon, and he and the horses attached to said wagon were drowned; that, the water receding, the bodies of the horses drifted ashore near a road along said lake; that the owner of the said horses came to where the bodies of the said horses were, to arrange for their burial; that the deceased, in a wagon accompanied by his wife and others, stopped near said dead horses, and was employed to and did aid in burying said horses; that a quantity of whisky was found on the lake shore, and that while preparation for said burial was in progress the defendant in a partly intoxicated condition came to the scene of the burial, having in a sack bottles of whisky, was in an angry mood and expressed a desire to fight, threw his hat on the ground, and said he could whip any son of a bitch that got on it; that the deceased and defendant drank whisky together, became involved in heated arguments and indulged in pro-

fanity towards each other which resulted in a fight; that while said fight was in progress the wife of the deceased struck the defendant; that upon becoming separated the defendant went a short distance, secured a "neck yoke of a wagon," immediately returned to where the deceased was, and struck deceased on his forehead and across his ear, from which blows the deceased died the same day he was struck.

The evidence was in sharp conflict as to whether or not the deceased at the time he was struck by the defendant was armed with a piece of wagon coupling about three feet long and endeavoring to strike the defendant, and as to what the wife of the deceased struck the defendant with, and there was evidence that at the time the defendant struck the deceased the blows that caused his death the deceased was down, without anything in his hands and unarmed, and in a helpless condition from intoxication.

The wife of the deceased, a witness for the state, upon cross-examination, having testified that on September 13, 1916, she had registered at the "Mistletoe Rooms" in Tulsa under the assumed name of Stella Wright, and that she knew Mr. Maddox, was asked the following questions by the defendant, viz.:

"That is a bawdyhouse, isn't it? Was Mr. Maddox registered at the Mistletoe Rooms on the night you registered under the name of Stella Wright? What room did you have?"

To each of said questions an objection was interposed by the state, and sustained by the court, and separate exceptions saved to said action of the court.

A general power of attorney executed by said witness to Charles Hann having been put in evidence, she was asked by the defendant the following questions, viz.:

"What business was it you wanted Mr. Hann to transact for you? Did the execution of this power of attorney have anything to do with the prosecution of this lawsuit? Where were you married? When were you married?"

To each of said questions an objection was interposed by the state and sustained by the court, and to said action of the court separate exceptions saved. The defendant then offered to show by this witness that the business which she authorized Charles Hann to transact under the said power of attorney was the collection of money for a settlement of this prosecution, which offer the court refused to permit the defendant to perform, and the defendant excepted.

The court, addressing the defendant's attorney, said, "Hadn't you better sit down so the jury can see the witness?" to which Mr. Norvell replied that the ruling of one of the federal courts is to require counsel to stand. The court then said, "You may stand if you don't be spectacular."

The defendant then asked the witness, "Didn't you and Mr. Maddox return from Sand Springs and go to the Mistletoe Rooms and occupy the same room? The court sustained an objection to this said question, and said: "If you ask any more questions about that I am going to fine you. If that does not stop you, I am going to stop you some other way."

Thereupon the following proceedings were had: Mr. Norvell, attorney for the defendant, was ordered to proceed with the case, to which he replied, "I am proceeding with it, and am offering to make an offer," to which the court replied, "The offer will be denied." Mr. Norvell then said, "I offer it anyhow, your honor cannot—" The

court then asked if Mr. Norvell had any more questions, and Mr. Norvell replied, "Your honor cannot refuse to make a record." Thereupon the court directed the clerk to enter a fine of $50 against Mr. Norvell, and that Mr. Norvell stand committed until said fine was paid.

Among other instructions, the court gave the following instruction, to which the defendant excepted:

"No. 19. The plea of self-defense is given to a citizen for his protection, and cannot be pleaded as a defense to homicide by one who is the aggressor or voluntarily enters into a difficulty; and in this connection you are instructed that if you believe from the evidence that the defendant sought, brought on, or voluntarily entered into the fatal difficulty in which the deceased lost his life, the defendant cannot avail himself of the right of self-defense, for the plea of self-defense is a defense growing out of necessity to take human life; the party taking life must be without fault."

The following occurred during the argument of Mr. Wallace, assistant county attorney, to the jury:

"Mr. Norvell: I challenge the statements of the county attorney. He knows the evidence wasn't anything like that.

"The Court: Mr. Norvell, for that statement you are fined $25, and you will be committed to the sheriff of this county until that fine is paid. The sheriff will so receive him as such, and I don't want to hear any more of it. This is a civilized country where God rules, and men's lives ought to be protected and their liberties ought to be protected. You have acted in this case all the way through by sitting on the table, by slamming doors, by your reprehensible conduct, in a way, Mr. Norvell, that you ought not to do."

The defendant excepted to the said remarks of the court in the presence of the jury.

The defendant timely moved for a new trial, which was overruled and exception saved.

There are very many errors assigned, other than alleged errors herein stated, which, from the view we take of the case, we deem unnecessary to state.

The defendant first contends that, as the grounds set up in the verified motion for a continuance were not denied by the state, the court committed reversible error in overruling said motion. We are unable to say that the court abused its discretion in overruling said motion, and think the fact that prior to the completion of the jury Mr. Norvell appeared in the courtroom and took charge of and most actively conducted the defense to the conclusion of the trial shows that the court did not err in overruling said motion. But we do not approve the remarks of the court made in open court and in the presence of the jurors assembled from which a jury to try the case was to be selected, in connection with said motion, that "the court took judicial knowledge that when the case was called he (Mr. Norvell) got sick all at once, and from the conduct of the attorney just before the case was called that this [the motion] is simply a ruse to pass the case over," but we do not think that in making said remarks the court committed such error as alone should cause a reversal of this case.

The defendant also contends that the court committed reversible error in overruling the demurrer to the information because "it is not averred therein the manner of use, the size of neck yoke, and the place upon the body of deceased which was beaten and wounded, as the averment in the information 'about three feet long' is descriptive of the size of the wagon, and not descriptive of the size of

the wagon yoke, and that it is averred that the defendants held the wagon and not the wagon yoke in their hands." We are satisfied that the averment "three feet long" describes the size of the wagon yoke and cannot be contorted as referring to the size of the wagon, and that the information clearly avers that the defendants held the wagon yoke in their hands, and not the wagon. It was sufficient to aver that the blows struck by the defendants with the wagon yoke caused the death of the deceased, without specifically stating upon what part of his body such blows were struck. If the blows caused the death of the deceased it was entirely immaterial upon what part of his body they were inflicted. We are of the opinion that the information is "certain and direct as to the parties charged, the offense charged, and particular circumstances of the offense charged," so far as necessary to constitute a complete offense, and is strictly within all the requirements of section 5739, Rev. Laws 1910, cited by defendant to sustain his attack upon said information. We conclude that the court did not err in overruling the demurrer to the information.

The defendant earnestly insists that the court committed reversible error in sustaining objections to questions asked the wife of the deceased as to the character of the "Mistletoe Rooms" and as to her having occupied there a room with Mr. Maddox the night previous to this trial, and also as to the business to be transacted under the power of attorney executed by her to Charles Hann. We are of the opinion that the questions in regard to matters not connected with the facts of trial, and tending to degrade a witness by proof of her want of virtue, "should be closely guarded, and allowed only upon the exercise of sound judicial discretion, and then only to affect the

credibility of the witness" *(Castleberry v. State,* 10 Okla. Cr. 504, 139 Pac. 132), and we are unable to say that in sustaining objections to the said questions seeking to elicit evidence of the want of virtue on the part of the witness the court "wrongfully exercised his sound judicial discretion."

The question as to the purpose for which said power of attorney was executed by the witness to Charles Hann went to the interest of said witness in the prosecution. If it was a fact that she had endeavored to settle this prosecution for a money consideration and failed it would be at least proper that the jury have such evidence in order to properly weigh her testimony, as it logically follows that such attempt and failure to so settle this prosecution would quicken her natural feeling against the defendant and bias her testimony, and hence the court committed error in refusing to permit the witness to explain for what purpose said power of attorney was executed by her.

The defendant further complains that the evidence is insufficient to support the verdict of the jury, and with this contention we are unable to agree. It is true that the evidence is in sharp conflict as to whether or not the defendant acted in self-defense in striking the blows which caused the death of the deceased, but there was evidence that at the time the deceased received the wounds inflicted upon him by the defendant the deceased was down, without anything in his hands and unarmed, and in a helpless condition by reason of being intoxicated. There being evidence to sustain the verdict of the jury though the evidence be in conflict, this court, as held by an unbroken line of decisions, will not disturb the verdict.

"In a homicide case, where there is evidence supporting the theory of the state that the defendant did not act

in self-defense, and also evidence supporting the theory of the defendant that he acted in self-defense, it is the exclusive province of the jury to determine which is the correct theory, and, having done so, if the instructions of the court properly present the law of the case, this court will not disturb the verdict." *McClatchey v. State,* 15 Okla. 448, 177 Pac. 922.

The defendant complains that the court committed reversible error in giving the jury instruction numbered 19, and this complainant we think well grounded. Said instruction does not sufficiently state what character of acts on the part of the defendant would deprive him of the right of self-defense, does not correctly define the right of self-defense, and the court committed reversible error in giving the jury said instruction.

In *Gibbons v. Territory,* 5 Okla. Cr. 212, 115 Pac. 129, it is held:

"Where in a homicide case the state endeavors to show that the defendant sought or brought on the difficulty and the general rules of law are charged on this phase of the case, the court should define and state what character of acts on the part of the defendant would deprive him of the right of self-defense."

"(c) When the prosecution in a homicide case is based on the theory that the defendant provoked the difficulty, the character of the provocation in connection with the intent should be set out and defined in separate affirmative charges."

In *Turnbull v. State,* 8 Okla. Cr. 459, 128 Pac. 743, it is held:

"When, in the trial of a person charged with murder, it becomes necessary for the trial court to instruct the jury on the doctrine of seeking or provoking the difficulty, and the proof discloses that the accused did any

act or thing which he had a right to do, which could be reasonably construed by the jury to come within the terms of the court's charge, it is necessary for the court to tell the jury what acts under the law would be justifiable, and discriminate as to acts unlawful which would deprive him of the right of self-defense, leaving to the jury to determine whether or not, under the facts and the law, the acts were lawful or otherwise. When this is done, and instructions are given which, reasonably construed, deprive the accused of the right of self-defense, if he by any willful act of his own, lawful or unlawful, brought on the difficulty, a conviction cannot be upheld by this court."

In order to deprive a defendant of the right of self-defense "the difficulty must be prepared for, sought, and provoked for the purpose and with the intent on the part of the accused to take the life of the deceased or do him great bodily harm," and the jury should be so instructed. *Swan v. State*, 13 Okla. Cr. 556, 165 Pac. 627.

In *Foutch v. State*, 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687, it is said:

· "In order to make a man guilty of murder who is the 'aggressor' or 'in fault,' or who 'provokes a difficulty,' in which his adversary is killed, he must have provoked it with the intent to kill his adversary, or do him great bodily harm, or to afford him a pretext for wreaking his malice upon his adversary. * * * In order to deny to such party the right to rely on the plea of self-defense, it must appear that he was the 'aggressor' or 'in fault,' or 'provoked the difficulty' in such way and with such intent as the law contemplates in the use of these terms. It is not every 'aggression' which produces a difficulty that is an unlawful one within the meaning of this phrase, nor is it every 'fault' which a man might commit that precludes him from defending himself when violently assaulted or menaced, nor is it every 'provoca-

tion of a difficulty' which robs him of the right of self-defense."

The defendant in his motion for a new trial alleges many grounds therefor, which said grounds we deem unnecessary to set out or review in detail. Considering the entire record, we are of the opinion that at the beginning of the trial friction arose between the defendant's attorney and the court, and which continued throughout the trial, which should not have arisen; that the remarks of the court when the motion for a continuance was being considered, and the expression of the court's opinion in open court and in the presence of attending jurors from whom the jury was to be selected, "that said motion was a ruse to pass the case over," the heavy fines assessed against the defendant's attorney during the trial of the case, notwithstanding said fines were remitted after the verdict of the jury was rendered, and the several very severe reprimands administered to the defendant's attorney in the presence of the jury trying the case without just grounds therefor, together with other acts of the court which we deem unnecessary to recite, created an atmosphere surrounding the trial which prevented the defendant having that fair and impartial trial to which he was entitled, and hence the court committed reversible error in refusing to grant the defendant a new trial.

In *McSpadden v. State*, 8 Okla. Cr. 489, 129 Pac. 72, it is held:

"Attorneys for a defendant are entitled to and must receive * * * fair treatment at the hands of a trial court, and when this is not accorded them, and the error is of such a character that it may have influenced the jury in finding a verdict, a conviction will be reversed."

In said case it is said:

"Courts have no right to humiliate and outrage lawyers for the defense for doing their duty. The effect of this necessarily creates the impression upon the minds of the jury that the counsel for the defense has been guilty of unfairness, and improper conduct, and this is calculated to excite their prejudice against the defendant. It may be accepted as a cardinal principle of criminal jurisprudence that fairness is a necessary element in the trial of criminal cases in this state. Attorneys for the defense may rely with confidence upon the protection of this court as long as they act within their legal rights. This is as much our duty as it is to condemn their conduct when they are guilty of unprofessional practice."

As the errors pointed out must cause a reversal of the judgment rendered, we deem it unnecessary to consider any other of the many errors assigned, especially in view of the great probability that the said errors not considered will not occur in another trial of this case.

The judgment of the trial court is reversed, and the cause remanded.

DOYLE, P. J., and MATSON, J., concur.