## LOUIS WILKIE v. STATE.

No. A-5358.  Opinion Filed Feb. 6, 1926.
(242 Pac. 1057.)

226

Forrest Hughes, A. S. Wells, Leahy, Macdonald & Files, and J. R. Charlton, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. For brevity and convenience, the plaintiff in error will be referred to as defendant.

The record discloses a state of facts about as follows: On the 4th of April, 1924, the defendant and Earl Bolt, the deceased, attended a country dance not far from Bartlesville. Some time during the course of the dance a quarrel took place between them, but of no particular consequences. It appears that the defendant was jealous of some attention paid by the deceased to May Reeve, with whom the defendant was keeping company. Some time after midnight the defendant and May Reeve had been out of the house, and when they returned, according to the evidence of the state, the defendant said to May Reeve, referring to the deceased, "There is that blonde son of a bitch; go take him." According to the evidence of the defendant he said, "There he is if you want him; go take him." The evidence of the state then is that the deceased said to the defendant, "Louie, I am a man capable of

taking care of myself," or words to that effect. No more words were passed then. Later the defendant was again out with May Reeve, and when he returned, according to the evidence of the state, defendant renewed the quarrel and cursed deceased, and drew his gun, and one of the witnesses intervened and asked him not to do that; that deceased started to walk away from defendant, and had taken perhaps three steps when defendant said, "Give me room," and shot deceased with a pistol, and then said to deceased, "Well, how do you like that?" and the deceased said: "Louie, you have shot me;" and fell on the floor. The defendant said, "I told him I would kill him over her." According to the evidence offered by defendant, just before the shooting deceased walked up to defendant, and they started quarreling, and defendant stepped back, and the deceased advanced on him with his left hand up, and with his right hand reaching back toward his hip pocket, and that deceased said, "I will just get you now." The deceased was in his shirt sleeves, and was not armed. He was put in a car to be taken to Bartlesville, but died before reaching there.

Almost all, if not all, the parties at the dance were drinking, and the evidence is conflicting. That of the state would indicate that the defendant killed deceased without justification, while that of the defendant tends to raise the issue of self-defense. The court submitted to the jury the issue of murder, manslaughter in the first degree, and self-defense. Only two assignments of error are argued: First, that the court erred in its instructions to the jury; second, that the verdict is contrary to the law and the evidence.

Under the first assignment, the defendant complains of the court's instructions No. 8 and No. 11, as follows:

"No 8. You are instructed that the right of self-defense is given to the citizen for his protection, and it cannot be pleaded as a defense and relied upon for an acquittal by one who himself is the aggressor, or by one who enters voluntarily into a difficulty, armed with a deadly weapon, no matter how great his danger or how imminent his peril may become during the course of the difficulty."

"No. 11. You are instructed that the word 'aggressor,' as used in these instructions, refers to and means the person who provoked the difficulty. To 'provoke the difficulty,' as used in these instructions, means, to willingly and knowingly use some language or do some act, after meeting the antagonist, reasonably calculated to lead to an affray or deadly conflict."

It is contended that these instructions are not sufficient to give defendant his right of self-defense, and, in support of that contention, the following are cited: Gibbons v. Territory, 5 Okla. Cr. 212, 115 P. 129; Turnbull v. State, 8 Okla. Cr. 459, 128 P. 743; Swan v. State, 13 Okla. Cr. 546, 165 P. 627; Boyer v. State, 16 Okla. Cr. 388, 183 P. 620.

In connection with instructions Nos. 8 and 11, complained of, the court charged fully and clearly upon the law of murder, manslaughter in the first degree, the burden of proof, and presumption of innocence, and gave other instructions upon the law of self-defense, and informed the jury that the instructions must be considered as a whole. No complaint is made, except to the instructions numbered 8 and 11, here set out. No requests for any further or additional instructions or amplifications were made, save one upon the appearance of danger, which the court fully covered.

It is urged that, considering instructions No. 8 and No. 11 together, they, in the alternative, tell the jury that, if the defendant is the aggressor, he cannot plead self-defense, and, if he knowingly uses some language

reasonably calculated to lead to an affray or deadly conflict, he is the aggressor; but do not tell the jury that the words or act which might lead to an affray or deadly conflict must be spoken or done with the intention of provoking a difficulty and for the purpose or pretext of doing some great personal injury to or slaying the deceased.

The question for our determination here is, Do instructions Nos. 8 and 11, considered along with the other instructions given and in the light of the record before us, deprive the defendant of his right of self-defense, or fail to correctly advise the jury of such right? The case of Gibbons v. Territory, supra, is the foundation case for the Turnbull Case, the Boyer Case, and the Swan Case. It holds that the right of self-defense cannot be taken from a defendant merely because, at the time of the fatal difficulty, the defendant entertains an intent to kill the deceased without any overt act on his part to carry out such intent. The court upon that point said:

"* * * The jury was left to determine for themselves what amounted to bringing on the difficulty, and were in effect authorized to disregard the right of self-defense if they thought the defendant provoked the difficulty by engaging in a dispute, or any act, lawful or otherwise, that contributed to bringing it on. The instruction is in the alternative, and deprives the appellant of the right of self-defense if he sought or brought on the difficulty. Seeking a difficulty is a broad, general term, and in its popular sense he might be said to have sought the difficulty if he went there expecting attack to be made on him; but of course this was not the bringing on of the difficulty in a legal sense. One is not justified in killing another because the other harbors a murderous intent, and the right to defend one's self is not forfeited because there is in the mind intent and design. Intent unrevealed is like thought unexpressed, and the existence of an intent should

never warrant the taking of human like or prevent the protection of it. The giving of this instruction was error."

The instruction under consideration in the Gibbons Case was a concrete instruction, applying the law to the facts in that case. Here instruction No. 8 is an abstract statement of the law. Analyzed, it simply advises the jury that the right of self-defense is for protection and not for aggression, and that an aggressor or a voluntary combatant, armed with a deadly weapon, cannot invoke the right of self-defense. That is undoubtedly a correct abstract statement of law. It was approved in case of McDaniel v. State, 8 Okla. Cr. 209, 127 P. 358.

Instruction No. 11 undertakes to advise the jury what is meant by an aggressor within the meaning of instruction No. 8. An agressor is defined as one who provokes the difficulty. "To provoke the difficulty" has been defined as willingly and knowingly using some language or doing some act after meeting the antagonist reasonably, calculated to lead to the deadly conflict. Hawkins v. U. S., 3 Okla. Cr. 651, 108 P. 561.

Under the instruction given, one who provokes a difficulty is the aggressor in that difficulty. Without his words or acts, there would be no difficulty. If he "willingly" or "knowingly" (the terms used in the instruction No. 11), after meeting his antagonist, begins and brings about the difficulty, it is not particularly important whether he begins the trouble by words or acts, if they are such as are "reasonably calculated" to lead to an affray or deadly conflict. An individual is not permitted to provoke willingly or knowingly a difficulty, and then, when the difficulty has resulted in his slaying an unarmed antagonist, justify such slaying on the ground of self-defense. This is merely a taking advantage of his own wrongdoing, which the law does not

permit. Moutry v. State, 9 Okla. Cr. 623, 132 P. 915; State v. Hawkins, 18 Or. 476, 23 P. 475.

The law dealing with the imperfect right of self-defense was not suggested at the trial, and not attempted to be given by the court. It was the theory of the defendant, not that he provoked the difficulty and then in good faith withdrew, but that deceased provoked the difficulty and was slain by the defendant upon appearance of danger in his necessary self-defense. The holding in the Gibbons Case cannot be extended to apply to the facts disclosed by the record in this case, and the law of self-defense set out in the instructions. It requires too great a refinement of interpretation to say that the instructions as a whole deprived the defendant of his right of self-defense. Whatever error there may be in the instructions, we think, is harmless.—Little v. State, 25 Okla. Cr. 190, 219 P. 424.

Under the contention that the evidence is insufficient, it is argued that the defendant can be guilty of no higher offense than manslaughter in the first degree. The law applicable to first degree manslaughter was fairly submitted, but the jury by its verdict found against the defendant, and the evidence fully sustains their verdict.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.