JAMES RILEY v. STATE.

No. A-6391.    Opinion Filed July 7, 1928.
(268 Pac. 996.)

324

Phillips & Phillips and A. L. Herr, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, who for brevity will be referred to as defendant, was convicted in the district court of Grady county of manslaughter in the first degree, and his punishment fixed at imprisonment in the state penitentiary for a term of 25 years.

The testimony for the state discloses that at the time charged defendant Riley, Powell, the deceased, and two men, Deaton and Beam, were playing poker in a rooming house in the city of Chickasha. Defendant and Powell got into a row over the game, and defendant drew a pistol on Powell, abused him, and threatened to kill him. The landlady, Mrs. Ezell, who was watching the game, interposed and persuaded defendant to put up his gun. Powell said he wanted no trouble and proposed they shake hands, which defendant refused. Powell then produced a bottle of whisky and invited all to drink, which the parties, including defendant, did. Powell then told defendant he was a "dirty cur," and defendant leveled the pistol at him, but on interposition of Deaton did not shoot, and Powell left the room. Defendant then registered and was assigned to a room. Mrs. Ezell was at the room of Deaton and Beam, where the card game had been, a few minutes later, when Powell came in and sought to renew the difficulty, but on finding that Riley was not there went down the hall with Mrs. Ezell, stating he was going home. As they went down

the hall, defendant, with a gun in his hand, came out of a room with Deaton. Mrs. Ezell, fearing difficulty, had Powell step into her room. After Powell and Mrs. Ezell had gone into her room, Deaton and Riley stepped in front of the door talking. Powell asked her to open the door and let them in, and she declined. They demanded admittance, and the landlady unlocked the door and went out. Defendant still had a gun in his hand, and she asked them to leave. Deaton went to his room, got a suitcase, came back, and proposed to defendant that they go in and get Powell. She insisted that they leave, but they pushed her aside and made threats. Powell pulled the door open from the inside, and two shots were fired in quick succession by defendant, who fired three or four altogether. After two shots had been fired by defendant, shots were fired from the inside of the room. The gun used by deceased belonged to the husband of Mrs. Ezell. Defendant testified that he participated in the game, and that a controversy arose in which Powell raised up from his seat and made a rush, and being a large man defendant drew his gun and made him sit down; that this occurred three or four times; that finally Powell produced whisky and all of them took a drink, and Mrs. Ezell took Powell from the room; that defendant later returned to the room and learned that Powell had been there looking for him, and he proposed to leave, and started to do so; that Deaton returned to get the suitcase, and as he came back Powell pushed open the door, stuck out his gun, and began shooting; that he did not fire until after Powell had fired.

This is a brief summary of the evidence. Two theories are presented. That of the state at the least discloses manslaughter in the first degree; that of defendant, a case of self-defense. Defendant's counsel at some length contended that, due to interest, the testimony of the witnesses for the state is not to be believed, but the theory and testimony of defendant and his witnesses are the

more reasonable and disclose the true state of facts. When there is a sharp conflict in the testimony of witnesses, it is always possible that the jury as the trier of facts may err and may reject testimony that is true and believe testimony that is false. No better system for arriving at the truth, however, than ours can be devised. A defendant assists in selecting the jury to determine the facts. The witnesses confront the accused; they submit to cross-examination by counsel of defendant's choosing; the jury observe them, their demeanor on the stand, their manner of testifying, their apparent candor and frankness, or the lack thereof. They must answer as to their interest, if any, in the case, their relationship or connection with the parties, and they may be impeached even as to general reputation for truth and veracity. With this liberal practice for arriving at the truth, it is a wholesome rule that an appellate court in criminal cases will not reverse a case as contrary to the evidence where there is testimony, although it may be conflicting, from which the jury may reasonably and logically find a defendant guilty. It was for the jury to say whom they would believe and what weight and credit they should give the witnesses. Although the testimony is conflicting, the verdict here is aply supported by the evidence.

Complaint is made that the court permitted a witness, a Mrs. Warren, to testify that while in her room next adjoining that of Mrs. Ezell, immediately before the shooting she heard some one say:

"Get your gun. Let's go in after him. Burn him out. He has been around there and threatened my boy. * * * Let's go in there after him."

The witness was unable to identify the party making this statement, but as the two Deatons were father and son, and the son was in the room with Mrs. Ezell when Powell returned there to renew the quarrel, and

as the father was with defendant at the time the shots were fired, there can be no reasonable question but that these statements were made by the elder Deaton. The jury could not have supposed it to have been made by any one else. It was admissible as a part of the res gestæ and as throwing light on the homicide.

Next it is argued that the court's instruction No. 15 is prejudicially erroneous. This is an instruction often given in defining the law of self-defense. It is set out substantially in the cases of McDaniel v. State, 8 Okla. Cr. 209, 127 P. 358; Wilkie v. State, 33 Okla. Cr. 225, 242 P. 1057, and it is not necessary to quote it here. It is a correct abstract statement of the law. As a concrete instruction applied to a given state of facts, it might be incorrect depending on the stated facts.

Lastly, it is urged that defendant's supplemental motion for a new trial on the ground of newly discovered evidence should have been granted. This supplemental motion set out that since the trial it was learned that the gun Powell had at the time he was killed had been borrowed by him that afternoon from one Hall. To this supplemental motion was attached an affidavit of Hall that he had loaned it to Powell the evening before the shooting. Mrs. Ezell had testified that the pistol belonged to her husband. It is not of any great importance who owned the pistol Powell had at the time. Even if, as stated by Hall, deceased had borrowed the pistol from him, the question whether or not the shooting of deceased by defendant occurred as testified to by the state's witnesses, or as testified to by defendant and his witnesses, would remain the same. No reason for reversal is made to appear.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.